Kass Harstad (Bar No. 11012)
Cameron Platt (Bar No. 16548)
**STRINDBERG & SCHOLNICK, LLC**
675 East 2100 South, Suite 350
Salt Lake City, Utah 84106
(t) 801.359.4169
(f) 801.359.4313
Email: kass@utahjobjustice.com
        cameron@utahjobjustice.com

*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **CINDY THORPE,**<br><br>      Plaintiff,<br><br>vs.<br><br>**PHC OF UTAH, INC.**, a Massachusetts corporation, d/b/a **HIGHLAND RIDGE HOSPITAL**; **ACADIA HEALTHCARE COMPANY, INC.**, a Delaware corporation; and **DISCOVERY BENEFITS, LLC**, a North Dakota corporation,<br><br>      Defendants. | **COMPLAINT**<br>**(JURY DEMANDED)**<br><br>Civil No.<br><br>Judge |

Plaintiff Cynthia Thorpe ("Thorpe" or "Plaintiff"), by and through her attorneys, hereby complains against Defendants PHC of Utah, Inc., d/b/a/ as Highland Ridge Hospital ("PHC/Highland"), Acadia Healthcare Company, Inc. ("Acadia"), and Discovery Benefits, LLC ("Discovery") (collectively, "Defendants") as follows:

### I.    NATURE OF THE CLAIMS

1. This suit is brought by Plaintiff under the following statutes:

    a.   The Family and Medical Leave Act of 1993 ("FMLA") as amended and

         codified at 29 U.S.C. § 2601 *et seq*; and

1

    b.  The Employee Retirement Income Security Act of 1973 ("ERISA") as amended and codified at 29 U.S.C. § 1001 *et seq*.

2. Defendants PHC/Highland and Acadia improperly denied Plaintiff her right to leave in violation of the FMLA, by, among other things, failing to correctly process Plaintiff's claims for FMLA leave, or in the alternative retaliated against her by terminating her employment for taking FMLA leave.

3. Defendants PHC/Highland, Acadia and Discovery denied Plaintiff her rights under ERISA by breaching their fiduciary duties to Plaintiff by preventing her from obtaining COBRA health insurance benefits.

4. Defendants PHC/Highland and Acadia discriminated against and interfered with Plaintiff's right to health insurance benefits under an employee benefit plan and interfered with Plaintiff's right to obtain health insurance under COBRA.

5. Plaintiff seeks economic damages, compensatory damages, equitable relief, liquidated damages, statutory damages, interest and attorneys' fees and costs.

## II. PARTIES

6. PHC of Utah, Inc., is a Massachusetts corporation registered to conduct business in Utah, where it does business as Highland Ridge Hospital. The hospital is at 7309 South 180 West, Midvale, UT 84047. PHC/Highland provides psychiatric, outpatient mental health, and runs substance abuse centers.

7. Acadia Healthcare Company, Inc., is a Delaware corporation registered to conduct business in Utah, with its principal place of business at 6100 Tower Circle Suite 1000, Franklin Tennessee 37067.

8. On information and belief Acadia is either the sole or a part owner of PHC/Highland. However, even if Acadia did not have an ownership interest in PHC/Highland, it was responsible for handling the FMLA paperwork submitted by Thorpe and for approving (or denying) said leave.

9. Discovery Benefits, LLC, is a North Dakota corporation registered to conduct business in Utah, with its principal place of business at 4321 20th Avenue South Fargo, North Dakota 58103. The exact relationship between Discovery and PHC/Highland or Acadia is not known, but it is believed that Discovery was responsible for handling COBRA benefits and documentation for PHC/Highland and Acadia and their employees/former employees.

10. Plaintiff Thorpe resides in the State of Utah, Salt Lake County, and was employed by PHC/Highland at its facility in Midvale, Utah.

### III.   JURISDICTION AND VENUE

11. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

12. This Court also has jurisdiction pursuant to 29 U.S.C § 1132(e) and § 1132(f).

13. Venue is proper with this Court pursuant to 28 U.S.C. § 1391 because all Defendants are residents of the State in which the district is located (as resident is defined under 28 U.S.C. § 1391(c)(2)), and because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

### IV.   GENERAL ALLEGATIONS

14. PHC/Highland hired Thorpe in September 2016 to work at its hospital in Murray, Utah as a therapist performing psychological assessments on incoming patients.

15. As part of her compensation, PHC/Highland provided health insurance benefits to Plaintiff.

16. Thorpe is a single mother raising three sons. At the time of events relevant to this case, one of her sons suffered from significant medical conditions requiring extensive medical treatment and care.

17. In the late spring of 2017, about six months after she had started working at PHC/Highland, Thorpe learned that her son needed surgery and would need significant time and care to recover. The surgery was scheduled for September 11, 2017.

18. Thorpe promptly notified Troy Jensen, Highland's HR Director ("Jensen"), of her son's approaching surgery and requested to take FMLA leave to care for her son following surgery.

19. Jensen responded that because Thorpe had not yet worked a full year she was not currently eligible to take FMLA and would need to wait until she completed one year of employment on September 18, 2017.

20. Thorpe then requested, and PHC/Highland approved, that she be allowed to take one week of unpaid leave from the day of her son's surgery until she had completed one year of employment, at which time she would take FMLA leave.

21. Jensen directed Thorpe to contact Jennifer Grimes ("Grimes"), an employee with Acadia's Healthcare Leave Administrative Team, to coordinate her FMLA leave. Unfortunately, Acadia had recently hired Grimes and she apparently had no experience in handling leave requests.

22. As a result, Grimes repeatedly failed to process Thorpe's FMLA paperwork and information correctly and Thorpe had to call Grimes repeatedly, but Grimes never answered her phone or returned Thorpe's voicemail messages.

4

23. Thorpe's son underwent surgery on September 11, 2017, and subsequently was hospitalized for ten days.

24. One month prior to her son's surgery, Thorpe discovered a sizeable lump in her breast while performing a self-examination. Thorpe tried to get in to see her doctor for a mammogram but was unable due to the doctor's full schedule.

25. Instead, Thorpe contacted a doctor who worked at PHC/Highland who wrote out a prescription for Thorpe to have a mammogram done. Thorpe had the mammogram performed while her son was in the hospital recovering from surgery. The mammogram confirmed that Thorpe had breast cancer.

26. Anxious for her son's recovery, and now reeling from her own diagnosis of breast cancer, on or about mid-September, Thorpe telephoned Matt Wilburn, Highland's CEO ("Wilburn") and told him she had been diagnosed with breast cancer.

27. Wilburn asked Thorpe to notify him when she had a timeframe for her treatment after she saw an oncologist.

28. Thorpe replied that while she would need to take time off for her own treatment, she was going to delay that treatment until her son sufficiently recovered from his surgery.

29. On information and belief, Wilburn did not notify Highland's human resource department of Thorpe's own medical issues or take steps to ensure that Thorpe would receive FMLA leave once she had completed one year of employment.

30. Even though Thorpe had been off work since September 11, 2017, she was forced to stand in the hallway outside her son's hospital room and repeatedly call Grimes to find out why that leave had not yet been approved. Over the course of one or more phone conversations,

Thorpe explained to Grimes why she needed, and was entitled to, leave, and repeatedly described the paperwork she had previously provided to Acadia.

31. Grimes responded that she was brand new in her position, was still not fully trained in her job, and she would need to get back to Thorpe.

32. When Grimes failed to call back, Thorpe again called her and Grimes confessed she had not contacted Thorpe because she had not completed the necessary paperwork to get the leave approved because she had been attending training classes.

33. Grimes again committed to getting Thorpe's paperwork completed and her leave approved. However, several additional weeks went by without resolution, and frustrated with the time and stress caused by Grimes' inexperience, Thorpe called Jensen to try and resolve the situation.

34. On October 17, 2017, Thorpe spoke to Jensen and told him she needed FMLA leave, retroactive to September 26, 2017[1], to run through December 9, 2017. Thorpe explained that she had contacted Grimes numerous times but still had not received confirmation of her leave request.

35. It is believed that Jensen contacted Grimes' supervisor and complained that he now had two employees who had requested FMLA leave through Grimes and neither had received a response (the second employee was Thorpe's supervisor, Christine Rosales).

36. Jensen then explained to Thorpe that because her FMLA request had not been correctly processed, her FMLA leave would "officially start" on October 18, 2017. Thorpe

---

[1] It is not clear why Thorpe requested leave retroactive to September 26th and not September 19th which was the start of her second year of employment. However, this incongruity is not relevant to the issues raised in this Complaint.

understood this to mean that her FMLA leave would continue for twelve weeks until January 10, 2018.

37.     In response to her October 17th request, PHC/Highland sent Thorpe a letter stating that she was eligible for "11 [sic]weeks starting availability" of FMLA leave and requiring that she provide medical documentation supporting the need for leave by November 1, 2017.

38.     The letter from PHC/Highland also directed Thorpe to return the medical documentation/paperwork to Acadia's Healthcare Leave Team.

39.     Thorpe immediately contacted her oncologist and gave her the medical certification paperwork that PHC/Highland required.

40.     Thorpe's doctor filled out the forms and returned the medical certification paperwork to Acadia by fax.

41.     On or about October 26, 2017, Acadia's leave team sent Thorpe a letter explaining that her medical insurance would continue while on FMLA leave, and the amounts and payment schedule that Thorpe had to meet to maintain her health insurance.

42.     Thereafter, Thorpe began making the required payments to maintain her insurance.

43.     In or about late October, Thorpe again telephoned Wilburn to update him about her cancer treatment and her son's recovery. She explained that she would be undergoing chemotherapy treatments during December 2017 and January 2018 while on leave.

44.     Wilburn wished Thorpe well in her treatment and told her she did not need to work in January of 2018 until she was ready.

7

45. Unfortunately, Grimes apparently failed to process Thorpe's FMLA paperwork for a second time which caused Acadia to deny approval of Thorpe's leave (notwithstanding the October 26th letter it had already sent to Thorpe.)

46. On November 6, 2017, Jensen sent an email to Thorpe advising her that PHC/Highland was changing her employment status from full-time to PRN (or "as needed") status.

47. PHC/Highland claims that Jensen also sent a letter to Thorpe the same day, explaining that Acadia had denied Thorpe's FMLA leave request.

48. This letter supposedly reiterated Thorpe's change to PRN status and advised her that she could elect to enroll in COBRA benefits through its third-party COBRA benefits administrator, Discovery.

49. Thorpe never received this letter.

50. Acadia claims that it also sent a second letter to Thorpe dated November 6, 2017, stating that her October 17th FMLA leave request was being denied "because no documentation was returned to certify the leave."

51. Thorpe did not receive Acadia's November 6th letter either. On information and belief, it is alleged that these two letters were created after Thorpe had complained about the mishandling of her leave and benefits and threatened legal action.

52. On information and belief, because Acadia had failed to process Thorpe's FMLA paperwork, Thorpe's medical insurance benefits ended on November 6, 2017.

53. After getting the November 6th email from Jensen, Thorpe heard nothing from any of Defendants until December 31, 2017, when she received a termination notice from PHC/Highland.

8

54. PHC/Highland claims that it terminated Thorpe because she failed to provide medical certification paperwork, failed to complete mandatory certifications while on FMLA leave, and "gave no indication that she had any intention of ever returning to work."

55. PHC/Highland's contentions were false as Thorpe's doctor had sent in her medical certification paperwork and Thorpe had made every effort to complete the FMLA process. Furthermore, Thorpe kept PHC/Highland apprised of her treatment and expected January return-to-work date.

56. When Thorpe received the termination notice she was in the middle of chemotherapy treatments and was suffering from its significant side effects and was still caring for her son. She was so exhausted and frustrated, after spending so much time and effort to get her FMLA leave approved that she simply had no energy left to challenge the termination (though it's not clear that any such challenge would have been successful.)

57. Several weeks later Thorpe received documents from Discovery informing her of her right to continue her health insurance under COBRA.

58. Thorpe contacted Discovery, as directed, to continue her health insurance, which was particularly important given her ongoing chemotherapy treatment for cancer.

59. However, when Thorpe spoke with someone at Discovery, that person told her that she could not apply for COBRA benefits because PHC/Highland had informed them she was ineligible for COBRA benefits.

60. When Thorpe pressed for more information, the individual said, "usually when this happens it's because of a medical issue." Thorpe replied she thought it was because of her son's prior medical issues or her own cancer treatment, to which the individual replied, "that's when the usually deny someone."

9

61. Thorpe had two more phone conversations with Discovery's employees who continued to tell her she was ineligible for COBRA benefits based on PHC/Highlands designation and told Thorpe that she needed to resolve the issue with PHC/Highland.

62. Completely demoralized by Defendants' treatment, Thorpe concentrated on her cancer treatment and recovery and caring for her son. Ultimately she was forced to apply for health insurance under Medicaid which did not provide as high a level of medical coverage as the health .

63. As a result of Defendants' actions, Thorpe was left personally responsible for a staggering amount of unpaid medical bills and costs.

64. Because she was out of a job, Thorpe struggled to provide for her three children and pay her overwhelming medical debts and was forced to declare bankruptcy in May 2019.

65. Thorpe has suffered significant financial harm from Defendants' misconduct, as well as lost the benefits she was entitled to under PHC/Highland's health insurance plan. In addition, Thorpe has suffered severe emotional distress from the denial of her rights and the loss of her employment.

66. On information and belief, it is alleged that what happened to Thorpe was not an isolated incident and that PHC/Highland and Acadia have a history of discriminating against, interfering with, and retaliating against employees who seek FMLA leave or use health insurance benefits to pay for serious medical conditions.

67. For example, Thorpe's direct supervisor also took leave from work under FMLA to seek medical treatment. The supervisor experienced similar mistakes, delays and obstructions from Acadia when she submitted her own FMLA paperwork.

68. In addition, it is believed that two other prior employees of PHC/Highland took FLMA leave from work for cancer or other serious health conditions and were not allowed to return to work.

69. On information and belief, PHC/Highland and Acadia obstructed these other employee's use of health insurance benefits and retaliated against them by terminating their employment.

## FIRST CAUSE OF ACTION
**(Interference with FMLA against PHC/Highland and Acadia)**

70. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

71. PHC/Highland is an employer under the FMLA who employs 50 or more employees within a 75-mile radius of its Murray, Utah location.

72. PHC/Highland employed Thorpe as a therapist from September 2016 through December 2017, during which period she worked more than 1,250 hours in the 12 months prior to her termination.

73. Thorpe qualified for, and requested, FMLA leave to care for her son following his surgery, and again for her own serious medical condition after her cancer diagnosis.

74. PHC/Highland interfered with Thorpe's ability to take and/or complete her FMLA leave by 1) never processing her FMLA paperwork or approving her leave; 2) changing her employment from full time to PRN status on November 6, 2017; 3) stopping her health care benefits on November 6, 2017; and 4) terminating her employment before she could return to work because she supposedly failed to complete certain "mandatory certification" and not indicating when she could return to work (neither of which was true.)

75. Defendants' interference with Thorpe's ability to take and/or complete her FMLA leave violates 29 USC § 2615(a)(1) which prohibits an employer from interfering with an employee's ability to take leave under the FMLA.

76. Defendants' actions and violation of the statute harmed Thorpe who has suffered and will continue to suffer losses. Pursuant to 29 U.S. Code § 2617, she is entitled to all available relief, including back pay, reinstatement and/or front pay, and actual and compensatory damages, as well as costs and attorney fees, interest, and liquidated damages.

## SECOND CAUSE OF ACTION
### (Retaliation in violation of FMLA against PHC/Highland and Acadia)

77. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

78. Thorpe engaged in protected activity when she requested and effectively took FMLA leave to care for her son following his surgery and for her own serious medical condition.

79. Defendants terminated Thorpe in retaliation for her use of leave either shortly before or shortly after her FMLA leave expired.

80. Defendants' termination of Thorpe's employment for taking leave is retaliation which violates 29 USC § 2615(a)(2) which prohibits an employer from taking adverse action against an employee who has exercised her right to take FMLA leave.

81. Defendants' actions harmed Thorpe who has suffered and will continue to suffer losses. Pursuant to 29 U.S. Code § 2617, she is entitled to all available relief, including back pay, reinstatement and/or front pay, and actual and compensatory damages, as well as costs and attorney fees, interest, and liquidated damages.

## THIRD CAUSE OF ACTION
### (Benefit and Relief Recovery and Enforcement Action under 29 U.S.C. §1132(a)(1)(B) and §1132(a)(3) for breaches of fiduciary duty under ERISA)

82. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

83. PHC/Highland's employee health insurance benefit qualifies as an "employee welfare benefit plan pursuant to 42 U.S.C. § 1002(1).

84. On information and belief, PHC/Highland was, and is, both a Plan Sponsor and Plan Administrator of its health insurance plan (the "Plan") as defined in U.S.C. § 1002.

85. In addition, on information and belief, PHC/Highland delegated some of its administrative duties to Acadia and Discovery. Therefore Acadia and Discovery were also Plan Administrators.

86. More specifically, Acadia was responsible for processing Thorpe's FMLA paperwork and ensuring that she continued to be entitled to health care benefits while on leave, and Discovery was responsible for the administration of COBRA benefits for PHC/Highland and/or Acadia.

87. Defendants are fiduciaries of the Plan under 42 U.S.C. § 1002(21) because their officers and employees exercise discretionary authority or discretionary responsibility in the administration of [the Plan]."

88. 42 U.S.C. § 1104(a)(1)(B) required Defendants to perform their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

89. Defendants PHC/Highland and Acadia breached their fiduciary duties when they failed to process Thorpe's FMLA leave paperwork which prevented her from being covered under PHC/Highland's health insurance Plan after she went out on leave.

90. Defendants PHC/Highland and Acadia also breached its fiduciary duties when it prevented Thorpe from continuing her health care under COBRA after it fired her by declaring her ineligible for such benefits.

91. Defendant Discovery breached its fiduciary duties by failing to verify Thorpe's eligibility for COBRA benefits after PHC/Highland told it that Thorpe was ineligible for such benefits.

92. Thorpe relied on Defendants to fulfill their fiduciary duties and relied on Defendants' communications regarding her eligibility for continuation of benefits

93. Thorpe is entitled to recovery an amount equal to the benefits she is due under the Plan and all damages resulting from Defendants' breaches of its fiduciary duties, and other appropriate relief to be determined at trial.

94. Additionally, Thorpe is entitled to recover all her attorneys' fees and costs incurred in pursuing this matter, and interest on the amount of judgment from the date of loss to the date of satisfaction of the judgment.

**FOURTH CAUSE OF ACTION**
**(ERISA § 510, 29 U.S.C. § 1140: Action For Interference**
**With Rights Provided Under ERISA against PHC/Highland and Acadia)**

95. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

96. It is unlawful under 29 U.S.C. § 1140 for an employer "to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which [s]he is entitled under the provisions of an employee benefit . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."

97. PHC/Highland's employee health insurance benefit qualifies as an "employee welfare benefit plan" pursuant to 42 U.S.C. § 1002(1).

98. Thorpe was a participant and beneficiary of Defendants' Plan as defined in 29 U.S.C. §§ 1002(7), 1002(8).

99. Thorpe sought to maintain her benefits under the Plan by paying the employee portion of her health insurance during her FMLA leave and subsequently by attempting to continue her health insurance coverage pursuant to COBRA.

100. Defendants have a history of discriminating against and interfering with employees who use their health insurance benefits for serious medical conditions.

101. Here Defendants discriminated against Thorpe and interfered with her ability to continue her health insurance benefits while on FMLA leave by failing to correctly process her FMLA paperwork which led to the cancellation of her health insurance.

102. Additionally, Defendants interfered with and retaliated against Thorpe after it fired her when it told its third-party COBRA vendor, Discovery, that Plaintiff was ineligible for COBRA benefits "because of a medical issue."

103. As a result of Defendants' actions, Thorpe has been harmed and is entitled to the payment of benefits under the Plan in an amount as will be proven at trial, statutory damages, and attorneys' fees.

## JURY DEMAND

104. Thorpe, by and through undersigned counsel, hereby demands a trial by jury of any issue triable of right by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.	For equitable relief in the form of reinstatement in either her former position or an equivalent one;

2.	An award of back pay, lost benefits and reimbursement for Plaintiff's other pecuniary losses including unpaid medical expenses;

3.	For compensatory damages to compensate Plaintiff for her emotional distress, loss of enjoyment of life, and other non-pecuniary losses, in amounts to be established at trial;

4.	For Plaintiff's reasonable attorneys' fees and costs pursuant to 42 U.S.C § 12117(a), 42 U.S.C. 2000e-5(k), 29 U.S.C. § 1132(g)(1);

5.	For statutory damages pursuant to the Employee Retirement Income Security Act of 1973 ("ERISA") as amended and codified at 29 U.S.C. § 1001 *et seq*;

6.	For such further injunctive relief as is necessary to eliminate and prevent Defendant's discriminatory conduct and to make Plaintiff whole;

7.	Pre and post-judgment interest in such amounts as are permitted by law;

8.	For such further and other relief the Court deems appropriate, including equitable relief.

DATED this 18th day of December, 2020.

**STRINDBERG & SCHOLNICK, LLC**

/s/ Cameron Platt
Kass Harstad
Cameron Platt
*Attorneys for Plaintiff*